RANDALL'S FOOD MARKETS, INC., Vernon Frank Davis, Lewis Simmons, and Gary Mike Seals, Petitioners,

v.

Mary Lynn JOHNSON, Respondent.

No. 94–0055.

Supreme Court of Texas.

Argued Oct. 19, 1994.

Decided Jan. 12, 1995.

Jay H. Henderson, Holly H. Williamson, Houston, for petitioners.

Mark W. Stevens, Galveston, for respondent.

SPECTOR, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, HIGHTOWER, HECHT, CORNYN, GAMMAGE, and ENOCH, Justices, join.

This appeal presents three issues regarding an employer's treatment of an employee suspected of misconduct. The first is whether the employer's questioning of the employee about possible theft constitutes "extreme and outrageous conduct" necessary to state a claim for intentional infliction of emotional

distress. The second is whether the employer's request that the employee stay away from a particular area of the business premises during work hours constitutes false imprisonment. The third is whether the employer's statements made in the course of its investigations of employee wrongdoing fall outside of its qualified privilege. For the reasons explained herein, we answer all three questions in the negative. We therefore render judgment that the employee take nothing.

Mary Lynn Johnson, a manager of a Randall's store, purchased several items from the store, but did not pay for a large Christmas wreath that she was holding. Vernon Davis, the check-out clerk, did not charge Johnson for the twenty-five dollar wreath because, after ringing up her other items, he asked her if there was anything else, and she replied that there was nothing else. Davis reported Johnson's failure to pay him for the wreath to management. The store's security guard was then requested to investigate the incident. The guard contacted Lewis Simmons (director of the store), and Simmons reported the incident to Mike Seals (the district manager for that store).

When Johnson returned to work two days later, Simmons escorted her to an office in the back of the store and questioned her about the wreath. Johnson admitted that she left the store without paying for the wreath, explaining that she had a lot on her mind at the time. With Johnson in the room, Simmons then called Seals and reported the results of this interview to him. Because Seals wanted to meet with Johnson later that day, Simmons asked her to stay at the store. Simmons told Johnson that he did not think it would be a good idea for her to be on the store's floor; he suggested that she either remain in the office or work on a volunteer project painting a booth for a parade. Johnson chose to wait for Seals in the office. While she waited, Johnson left the office twice, once to use the restroom and the

second time to visit a friend in the floral department and to pay for the wreath.

When Seals arrived at the store, he and Simmons questioned Johnson further. They asked how she could forget to pay for an item when she was checking out with several other items at the same time. This questioning caused Johnson to cry. At the end of this interview, Seals suspended Johnson for thirty days without pay and informed her that at the conclusion of the thirty days she would be transferred to another, nearby store. Johnson never reported to work at the other store. She subsequently sued Randall's, Seals, Simmons, and Davis (collectively, "Randall's"), alleging various claims, including intentional infliction of emotional distress, false imprisonment, and defamation.

Some of Johnson's defamation allegations stem from statements made by Scottie Ketner, a former Randall's employee who worked in the cosmetics section of the store and was a subordinate of Johnson's. While employed at Randall's, Ketner complained about Johnson's management style and alleged that Johnson used store merchandise without paying for it. Ketner documented her complaints in memoranda addressed to Randall's management. Randall's investigated this incident and concluded that the problem was essentially a personality conflict for which Ketner was largely responsible.

The trial court granted Randall's motion for summary judgment on all of Johnson's claims. The court of appeals affirmed in part and reversed in part, reversing the judgment of the trial court on the claims of intentional infliction of emotional distress, false imprisonment, and defamation.[1] 869 S.W.2d 390.

■ This Court has jurisdiction of this case pursuant to sections 22.001(a)(1) and 22.001(a)(6) of the Texas Government Code. Because this Court has subject matter jurisdiction over the intentional infliction of emotional distress, false imprisonment, and libel actions, it has jurisdiction over the entire

---

1. The court of appeals reversed the trial court's judgment on the slander claim regarding the alleged theft of the wreath and the defamation claim concerning Ketner's statements, but upheld the trial court's judgment rejecting a third

case, including the slander issues.[2] *Stafford v. Stafford*, 726 S.W.2d 14, 15 (Tex.1987).

To prevail on a motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c). A defendant who conclusively negates at least one of the essential elements of a cause of action is entitled to summary judgment as to that cause of action. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). Likewise, a defendant who conclusively establishes each element of an affirmative defense is entitled to summary judgment. In reviewing a summary judgment, we must accept as true evidence in favor of the non-movant, indulging every reasonable inference and resolving all doubts in his or her favor. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 315 (Tex.1987).

## I.

To recover for intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex.1993). In *Twyman*, we adopted the Restatement's formulation of the tort of intentional infliction of emotional distress, including the definition of extreme and outrageous conduct as conduct that is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* at 621 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). We hold that the summary judgment evidence establishes as a matter of law that Randall's conduct was not "extreme and outrageous," an essential element of the tort of intentional infliction of emotional distress.

The conduct that Johnson alleges was extreme and outrageous is Simmons and Seals' questioning of her regarding the wreath. Johnson maintains that during Simmons' telephone conversation with Seals, which occurred after Simmons' initial questioning of her, his tone and manner became severe and curt. She alleges that Simmons merely answered Seals' questions and did not explain the facts to him. During Simmons and Seals' subsequent meeting with Johnson, the summary judgment evidence establishes that Johnson explained her version of the wreath incident, and then she was asked how she could forget to pay for an item when she was checking out with several other items at the same time.

Accepting all evidence favorable to Johnson as true, we conclude that, as a matter of law, neither Randall's nor its agents engaged in extreme and outrageous conduct. Randall's merely asked a management-level employee to explain a report of wrongdoing. Employers act within their legal rights in investigating reasonably credible allegations of dishonesty of their employees. *See Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31, 34 (5th Cir.1992). This conduct is not "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized community"; rather, it is a managerial function that is necessary to the ordinary operation of a business organization. *See Wornick Co. v. Casas*, 856 S.W.2d 732, 735 (Tex.1993).

## II.

The essential elements of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law. *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex.1985). A detention

---

slander claim. Johnson does not challenge the court of appeals' ruling on the third claim.

**2.** Although this Court now has jurisdiction over slander cases, it did not at the time that this litigation commenced. Act of May 17, 1985, 69th Leg., R.S., ch. 480, § 1, 1985 Tex.Gen.Laws 1720, 1731, *amended by* Act of May 25, 1993, 73rd Leg., R.S., ch. 855, §§ 2 & 3, 1993 Tex.Gen. Laws 3365, 3366 (amending § 22.225 of the Texas Government Code to provide this Court with subject matter jurisdiction over slander cases, excluding matters in litigation prior to Sept. 1, 1993, the effective date of the Act).

may be accomplished by violence, by threats, or by any other means that restrains a person from moving from one place to another. *Martinez v. Goodyear Tire & Rubber Co.*, 651 S.W.2d 18, 20 (Tex.App.—San Antonio 1983, no writ). Where it is alleged that a detention is effected by a threat, the plaintiff must demonstrate that the threat was such as would inspire in the threatened person a just fear of injury to her person, reputation, or property. *Id.* at 20–21; *Black v. Kroger Co.*, 527 S.W.2d 794, 796 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ dism'd). We hold that, as a matter of law, Randall's did not willfully detain Johnson.

Johnson bases her false imprisonment claim on her alleged confinement in a back office for several hours while awaiting the arrival of Seals.[3] According to Johnson's testimony, Simmons told Johnson that, while waiting for Seals, she could either paint a booth for a volunteer project or remain in the office, but he did not think it would be a good idea for her to be on the floor of the store. Johnson testified that she believed that Simmons would physically prevent her from leaving the back room had she wanted to leave. She based this belief on Simmons' "sternness, his tone of voice, [and] his insistence that I stay put."

Johnson does not contend that her detention was effected by actual physical force; rather, she alleges that Simmons detained her by sternly insisting that she stay put, which caused her to fear that he would physically prevent her from leaving had she attempted to leave. In effect, Johnson alleges that Simmons impliedly threatened her person. This allegation is conclusively negated by the fact that Johnson left the area that she was allegedly confined to twice, and no one tried to stop her from doing so. Neither Simmons nor anyone else guarded Johnson. Simmons never stated that he would physically restrain Johnson if she attempted to enter the floor of the store. Simmons did not even attempt to confine Johnson to a particular place; he merely suggested that she avoid one area of the store. In short, no threat was made to detain Johnson.

■■■ Simmons' request that Johnson not work in one area of the workplace does not constitute false imprisonment. When an employer supervises its employees, it necessarily temporarily restricts the employees' freedom to move from place to place or in the direction that they wish to go. Without more, however, such a restriction is not a "willful detention."[4] An employer has the right, subject to certain limited exceptions,[5] to instruct its employees regarding the tasks that they are to perform during work hours. Johnson was compensated for the time that she spent waiting for Seals, and Simmons gave her the choice of passing this time working on a volunteer project or sitting and waiting in the office. In order to effectively

3. The court of appeals stated that Johnson's false imprisonment claim is based not only on the alleged detainment while waiting for Seals, but also on the length of time involved in the interviews. 869 S.W.2d at 398. However, Johnson did not present any legal or factual arguments supporting a false imprisonment claim stemming from her meetings with Simmons and Seals to the court of appeals or to this Court. Her pleadings also do not allege such a claim. On the issue of false imprisonment, Johnson pleaded, in full, that:

Plaintiff Mary Lynn Johnson would further show that her liberty was falsely and wrongly restrained by Defendant Lewis Simmons at the direction of Mike Seals and, upon information and belief, with the approval of Ron Barclay, by ordering and instructing her to remain within confined spaces prior to the arrival of Mike Seals on Thursday, November 29, 1991, for a period of approximately two to three hours.

4. This type of restriction could constitute a willful detention where the employer also uses physical force or threatens the employee's person, reputation, or property. *See, e.g., Black*, 527 S.W.2d at 801 (holding that the jury could reasonably conclude that threats of being taken to jail and of not seeing her daughter for a long time could have intimidated the plaintiff to the extent that she was unable to exercise her free will to leave the interview room); *Kroger Co. v. Warren*, 420 S.W.2d 218, 220–22 (Tex.Civ.App.—Houston [1st Dist.] 1967, no writ) (upholding trial court's finding of false imprisonment where the plaintiff was told that she could not leave the room until she signed a statement and was physically restrained when she attempted to leave).

5. *See, e.g., Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex.1985) (holding that an employer may not discharge an employee for the sole reason that the employee refused to perform an illegal act).

manage its business, an employer must be able to suggest, and even insist, that its employees perform certain tasks in certain locations at certain times. As a matter of law, Randall's did not falsely imprison Johnson.

## III.

Johnson alleges that Randall's defamed her in the course of its investigations of the Christmas wreath incident and Ketner's allegations. Slander is a defamatory statement that is orally communicated or published to a third person without legal excuse. *Diaz v. Rankin*, 777 S.W.2d 496, 498 (Tex.App.—Corpus Christi 1989, no writ); *Ramos v. Henry C. Beck Co.*, 711 S.W.2d 331, 333 (Tex.App.—Dallas 1986, no writ). In suits brought by private individuals,[6] truth is an affirmative defense to slander. *Town of South Padre Island v. Jacobs*, 736 S.W.2d 134, 140 (Tex.App.—Corpus Christi 1986, writ denied).

In addition, an employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing. *Southwestern Bell Telephone Co. v. Dixon*, 575 S.W.2d 596, 599 (Tex.Civ.App.—San Antonio 1978), *writ dism'd w.o.j.*, 607 S.W.2d 240 (Tex.1980). The privilege remains intact as long as communications pass only to persons having an interest or duty in the matter to which the communications relate. *Butler v. Central Bank & Trust Co.*, 458 S.W.2d 510, 514–15 (Tex.Civ.App.—Dallas 1970, writ dism'd); *see also Bergman v. Oshman's Sporting Goods, Inc.*, 594 S.W.2d 814, 816 (Tex.Civ.App.—Tyler 1980, no writ). Proof that a statement was motivated by actual malice existing at the time of publication defeats the privilege. *See Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 631 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Bergman*, 594 S.W.2d at 816 n. 1. In the defamation context, a statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard as to its

truth. *Hagler v. Procter & Gamble Mfg. Co.*, 884 S.W.2d 771 (Tex.1994). To invoke the privilege on summary judgment, an employer must conclusively establish that the allegedly defamatory statement was made with an absence of malice. *See Jackson v. Cheatwood*, 445 S.W.2d 513, 514 (Tex.1969); *Goodman v. Gallerano*, 695 S.W.2d 286, 287–88 (Tex. App.—Dallas 1985, no writ).

Johnson claims that she was slandered in the course of the wreath investigation when Davis, Simmons, and Seals orally published, falsely, that she had stolen a wreath from the store. However, Randall's proved that all of the statements that its agents made concerning Johnson's actions with respect to the wreath were true. Randall's never accused Johnson of theft or of having the intent to steal. Throughout the investigation, Randall's employees merely communicated to each other that Johnson had left the store without paying for a wreath. Johnson does not dispute this fact; she argues only that she did not have the intent to steal. The summary judgment evidence contains deposition testimony from the employees who allegedly made statements regarding the wreath incident, and this testimony establishes that these employees did not speculate or make accusations regarding Johnson's intent.

Johnson incorrectly contends that, while the statements made by Randall's employees may be literally true, they are slanderous because those who hear the statements might infer that she is dishonest. Truth is a complete defense to defamation. Randall's had a right to investigate the wreath incident, and it could not have conducted the investigation without communicating the facts regarding Johnson's actions with respect to the wreath to each other.

Furthermore, all of the statements made by Randall's employees were qualifiedly privileged. Davis' report that Johnson left the store without paying him for a wreath triggered Randall's privilege to investigate. The employees who received communications re-

---

6. At this time, we need not and do not decide whether truth is an affirmative defense in slander cases brought by public officials or public fig-

ures. *See Casso v. Brand*, 776 S.W.2d 551, 555 n. 3 (Tex.1989).

garding the wreath incident were: several managers on duty on the night of the wreath incident, the security guard who subsequently investigated the incident, the assistant store manager, the director of the store, the district manager for the store, and the vice president of Randall's human resources. In addition, the security guard interviewed employees with knowledge of facts relevant to his investigation.[7] Thus, all of the employees who gave or received statements about the wreath incident had an interest or duty in the matter. Randall's established an absence of malice with regard to these statements by conclusively proving that its employees had reasonable grounds to believe that their statements were true. *See Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989). In fact, as discussed previously, the truth of the statements is undisputed.

■ The statements made by Randall's employees regarding Ketner's complaints are also qualifiedly privileged. Through both oral and written communications, Ketner complained to Randall's management that Johnson was a poor manager and that she used store merchandise without paying for it. As an employee of Randall's, Ketner was privileged to report this alleged wrongdoing to management. *Bergman,* 594 S.W.2d at 816. However, Ketner stepped outside the boundaries of this privilege by circulating a petition about Johnson to ordinary employees and customers. In so doing, Ketner, as a matter of law, acted independently and outside the scope of her authority as a cosmetician. *See Wagner v. Caprock Beef Packers Co.,* 540 S.W.2d 303, 304–05 (Tex.1976). The summary judgment evidence establishes that Randall's did not authorize, condone, or ratify Ketner's circulation of this petition; therefore, Randall's is not liable for any defamation claims that may have resulted from the petition's circulation. *Id.*

■ Once Randall's received Ketner's complaints, it was privileged to investigate

them. The summary judgment evidence establishes that various members of Randall's management received complaints from Ketner and forwarded them to the vice president of human resources, who documented the complaints and placed them in Johnson's personnel file. The record also establishes that the managers who received complaints discussed the complaints with Johnson's supervisors in an attempt to resolve the matter. The vice president investigated the complaints and reported the results in two of his own memoranda. Ketner's allegations were not repeated in these memoranda. Instead, the memoranda described the problem as largely a personality conflict, and placed the blame of the conflict largely on Ketner. These memoranda were circulated to members of Randall's management who had received Ketner's complaints or who were supervisors of Johnson. Thus, all of the employees who gave or received statements about the Ketner allegations had an interest or duty in the matter.

■ Randall's conclusively established an absence of malice with regard to statements made about Ketner's allegations. None of Randall's agents repeated Ketner's complaints with knowledge of their falsity or with reckless disregard as to their truth. The complaints were merely forwarded to the appropriate managers for investigation and resolution.

\* \* \* \* \* \*

We conclude that, as a matter of law, the conduct of Randall's in this case was not extreme and outrageous and did not constitute a willful detention of Johnson. On the subject of the wreath incident, we conclude that Randall's did not slander Johnson because all of the statements made by Randall's employees were both true and qualifiedly privileged. With regard to the Ketner allegations, we conclude that Randall's did not defame Johnson because all of the state-

---

7. In his concurring opinion, Justice Cohen concluded that Johnson's allegation that the security guard talked loud enough for others to hear him during these interviews was enough to defeat Randall's motion for summary judgment. 869 S.W.2d at 403. However, Randall's conclusively negated this allegation with the uncontroverted

deposition testimony of the security guard, which established that the interviews were conducted in the back of the store restaurant, that no one was nearby while the interviews were conducted, and that if anyone walked by, the security guard and the interviewees stopped talking.

ments made by Randall's employees were qualifiedly privileged. We accordingly reverse the judgment of the court of appeals and render judgment that Johnson take nothing.

OWEN, J., not sitting.