NO. 12-01-00301-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


DONALD REEDY,
§
 APPEAL FROM THE 191ST

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


CRAYTON WEBB AND

GAYLORD BROADCASTING COMPANY,
§
 DALLAS COUNTY, TEXAS

APPELLEES





 

 Donald Reedy ("Reedy") appeals the trial court's order granting summary judgment in favor
of Crayton Webb ("Webb") and Gaylord Broadcasting Company ("Gaylord") (collectively
"Appellees"). Reedy raises four issues on appeal. We affirm.


Background

 Webb, a reporter for a Dallas television station owned by Gaylord, reported a story about
mold contamination in a house recently purchased by the Kundysek family (the "Kundyseks"). The
home was constructed by Reedy's company, Stone Investments. The nature of Reedy's business was
to buy an older home, tear it down, make additions to the foundation and construct a home on the
foundation with the additions. The Kundyseks' home was a remodeled (1) home constructed on such
a hybrid foundation.

 On December 21, 1998, ten days after the Kundyseks moved into their home, (2) a substantial
water leak developed. The Kundyseks contacted Reedy who sent workers to the house the next
morning. However, when Reedy's workers arrived at the house, the Kundyseks, believing that the
pumps Reedy's crew had brought with them were inadequate, sent the workers away. Reedy
contacted the Kundyseks, who informed him that they would rely on their insurance company,
Chubb, to clear the water and repair any damage caused thereby. 

 After extensive research, including interviews with both the Kundyseks and Reedy, Webb's
report was broadcast on the evening news (the "television broadcast") and posted on the station's
internet site (the "web article"). The substance of the report on the station's website, which tracks
the language of the television broadcast closely, (3) is as follows: (4)


 Call for Action: Dallas Family Moves into Contaminated Home

 Tuesday September 28, 1999

 (KTVT) Tonight we have the story of a Dallas family who thought they bought the perfect house in
the perfect neighborhood. That is until thousands of gallons of water turned their dream home into
a money pit. Call for Action investigator Crayton Webb shows us why this family was forced to leave
the house the city says they never should've moved into.


 "It was our dream house. We wanted to raise our kids here," said Deeann Kundysek.


 The house they'd hoped to live in for the next thirty years is now environmentally contaminated. 


 David and Deeann Kundysek paid nearly a million-dollars last year for a Preston Hollow home, but
10 days after moving in; a joint to the main water line broke, flooding the foundation.


 According to engineering reports, 70,000-gallons of water was underneath the Kundyseks' house. To
give you an idea just how much that is you'd have to fill up a swimming pool more than three times
to get that much water.


 The Kundyseks immediately called their builder, Don Reedy of Stone Investments. The Kundyseks
say Reedy's men showed up with a small inadequate water pump, so they turned them away and called
their insurance company to get the job done quicker.


 But within weeks the Kundysek's daughters began getting sick, 6 month-old, Kennedy, even failed her
first hearing test.


 "I usually don't see a brand new home like this in this bad of condition," said Ken McBride, Texas
Health Department.


 Ken McBride of the Texas Health Department says carcinogenic mold was growing within the home's
walls.


 "Some of those molds are extremely bad. They can put you in the hospital permanently," said Ken
McBride. The builder, Don Reedy[,] offered to buy the house back for $550,000. The Kundyseks'
insurance company, Chubb, has offered $300,000 to fix the house, but there's no guarantee the mold
won't return. 


 City records show the Kundysek's house failed the final plumbing inspection before the deal was
closed. The city says the builder never should have allowed the family to move in.


 Call for Action couldn't find the plumber and Don Reedy refused an on camera interview, but he
claims the Kundyseks knew of the unfinished inspections and insisted on moving in anyway.


 The Kundyseks say they thought their house was brand new. Even the realtors list the house as
"quality new construction" built in 1998. But the house was actually a remodel Reedy had used part
of the foundation from a previous house that sat on the same lot.


 "We got a new home with some old parts still mixed in, basically," said the Kundyseks.


 Engineering reports show that old foundation had caused water problems under the house previously
and when the 70,000-gallon leak came.


 The Kundyseks' inspector found poor drainage, a muddy crawlspace and the hardwood floors cupping
the month before the family moved in.


 Reedy insists the Kundyseks knew they were getting a remodel. He, along with an industrial hygienist
he hired, say the mold grew because the family and their insurance company let the water from the leak
stand too long. So Call for Action hired our own professional engineer, Ron Reed.

 

 "The old foundation system, the way it was done in this case, essentially destroyed the house," said
Ron Reed, professional engineer.


 Our inspector found a number of structural problems under the house. He says the old foundation
acted as a dam and trapped the water. Even after a Texas summer, he says the crawlspace is still wet.


 Reedy insists the Kundyseks house is a unique case. He provided us a list of satisfied customers,
including Terry Clampitt.


 "He seems like he was always fair. If it wasn't fair he would tell me. But usually everything's been
fine. I've been really happy," said Terry Clampitt, Reedy homeowner.


 But David and Deeann Kundysek say they will never live in their house again, but they're still paying
for it with their money and with a sick child. "This isn't supposed to happen when you buy a new
house. You're not supposed to be putting your kids at risk," said Deeann Kundysek.


 Call for Action has learned that the family who lives across the street from the Kundyseks is suing Don
Reedy because they also found standing water under their home and mold.


 Reedy denies any wrongdoing in that case as well.


 If you're buying a home, new or remodeled, be aware that the City of Dallas does not inform
homebuyers if their house has passed all its inspections.


 You have to contact your builder or the city.


The Kundyseks' house was ultimately demolished. 

 Reedy filed the instant suit in May 2000. Appellees filed their motion for summary judgment
on February 1, 2001. Reedy amended his petition to include only allegations of libel and slander and
responded with supporting evidence to Appellees' motion for summary judgment. After being reset
four times, a hearing on Appellees' motion for summary judgment was held on June 1, 2001. The
trial court ultimately granted Appellees' motion for summary judgment. Reedy filed a motion for
new trial and asked the trial court to reopen the summary judgment evidence based on the imposition
of impossible deadlines, newly discovered evidence and allegations that Appellees had abused the
discovery process. The trial court overruled Reedy's motion for new trial and this appeal followed.


Defamation


Standard of Review

 The standard for reviewing summary judgment is the same for defamation cases as for other
types of cases. See Simmons v. Ware, 920 S.W.2d 438, 443 (Tex. App.-Amarillo 1996, no writ)
(citing Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989)). In reviewing a 166a(c) motion for
summary judgment, this court must apply the standards established in Nixon v. Mr. Property
Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985), which are as follows:


 (1) The movant for summary judgment has the burden of showing that there is no genuine issue
of material fact and that it is entitled to judgment as a matter of law; 

 (2) In deciding whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the non-movant will be taken as true; and

 (3) Every reasonable inference must be indulged in favor of the non-movant and any doubts
resolved in its favor. 


Nixon, 690 S.W.2d at 548-49. A movant must either negate at least one essential element of the
non-movant's cause of action, or prove all essential elements of an affirmative defense. See
Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). We are not required
to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits,
depositions, exhibits and other summary judgment proof. See Gulbenkian v. Penn, 252 S.W.2d 929,
932 (Tex. 1952). The only question is whether or not an issue of material fact is presented. See Tex.
R. Civ. P. 166a(c). Once the movant has established a right to summary judgment, the non-movant
has the burden to respond to the motion for summary judgment and present to the trial court any
issues that would preclude summary judgment. See, e.g., City of Houston v. Clear Creek Basin
Authority, 589 S.W.2d 671, 678-79 (Tex. 1979). Summary judgment should be affirmed on appeal
if any of the grounds presented in the motion are meritorious. See Carr v. Brasher, 776 S.W.2d 567,
569 (Tex. 1989). 

Governing Law

 Generally, to recover on a claim for defamation, the plaintiff must prove the defendant
published a false defamatory statement to a third party about the plaintiff. See Clarke v. Denton
Publishing Co., 793 S.W.2d 329, 331 (Tex. App.-Fort Worth 1990, writ denied), overruled on other
grounds, Cain v. Hearst Corp., 878 S.W.2d 577, 579 (Tex. 1994); see also Tex. Civ. Prac. & Rem.
Code Ann. § 73.001 (Vernon 1997). Truth is an absolute defense to a defamation claim. See Tex.
Civ. Prac. & Rem. Code Ann. § 73.005 (Vernon 1997). A media defendant is entitled to summary
judgment upon a showing of the substantial truth of its publication. Lewis v. A.H. Belo Corp., 818
S.W.2d 856, 858 (Tex. App.-Fort Worth 1991, writ denied); see McIlvain v. Jacobs, 794 S.W.2d
14, 15-16 (Tex. 1990). As an initial matter, the publication should be examined in its entirety. See
Simmons v. Ware, 920 S.W.2d 438, 444 (Tex. App.-Amarillo 1996, no writ). To determine whether
a statement is substantially true, we must consider "whether the alleged defamatory statement was
more damaging to the plaintiff's reputation in the mind of the average listener than a truthful
statement would have been." Jacobs, 794 S.W.2d at 16. Such an evaluation involves looking to the
"gist" of the publication. Id. The word "gist" means "the main point or part" or "essence."
Webster's Collegiate Dictionary 493 (10th ed. 1993). If the underlying facts related to the
"gist" of the alleged defamatory statement are undisputed, then we disregard any variance with
respect to factual items of secondary importance. Id. 

The Gist and Substantial Truth

 In their motion for summary judgment, Appellees argued the affirmative defense of truth. 
In his first issue, Reedy contends that the trial court was required to expressly determine the gist of
the stories prior to determining whether there was a material fact dispute concerning the truth of the
gist of the stories. While we agree that the epicenter of our inquiry rests on the facts underlying the
gist of the stories, see Jacobs, 794 S.W.2d at 16, we disagree that the trial court was required to
expressly determine this gist. In order to expressly determine the gist of the stories, the trial court
would have been required to make findings of fact and conclusions of law, which have no place in
a summary judgment context. See Linwood v. NCNB Texas, 885 S.W.2d 102, 103 (Tex. 1994). 

 In his second issue, Reedy argues that the trial court erred in failing to consider the cause of
action arising from Appellees' web article separately from the cause of action arising from the
television broadcast. We disagree. First, as set forth above, we have concluded that the gist for the
web article and television broadcast are essentially the same. Second, even if there were a different
gist for the web article as opposed to the television broadcast, there is no indication in the record that
the trial court failed to consider the two publications separately. See Linwood, 885 S.W.2d at 103. 
Reedy's second issue is overruled.

 Shifting our inquiry to the remainder of Reedy's first issue, it is necessary, in the interest of
clarity, for this court to expressly determine the gist of the stories at issue. See, e.g., KTRK
Television v. Felder, 950 S.W.2d 100, 106-07 (Tex. App.-Houston [1st Dist.] 1997, no writ). Based
on our review of the television broadcast and the web article, we conclude that, in the mind of the
average reader, the gist of the story, is as follows: After only living there for a short time, the
Kundyseks moved out of the house they bought from Reedy, the builder, because, following a
substantial plumbing leak, water became trapped in the foundation and did not drain properly, toxic
mold developed, and the house became contaminated.

 We next consider whether any facts in the summary judgment record that support the gist of
the story are disputed. See Jacobs, 794 S.W.2d at 16. Based on our review of the record, we find
no disputed facts supporting that (1) the Kundyseks moved out of their house, (2) the Kundyseks
bought the house from Reedy, who was the builder, (3) a substantial plumbing leak occurred at the
house after the Kundyseks had lived there for only ten days, (4) toxic mold developed, and (5) the
house became contaminated. Thus, we are left to consider whether the summary judgment evidence
that the water became trapped in the foundation and did not drain properly is disputed. 

 Appellees' evidence on this point is the report of an independent structural engineer, Ron
Reed. In his response to Appellees' motion for summary judgment, Reedy does not dispute the fact
that the water became trapped and did not drain properly. Rather, Reedy argued that Appellees
recklessly disregarded the truth by not disclosing that (1) the Kundyseks closed on their home before
it was complete, (2) certain foundation work, such as drainage, could not be completed due to
excessive rain, and (3) other work, such as crawl space ventilation, was specified and agreed to, but
that the Kundyseks did not allow Reedy's crew to complete the work after they moved in. While the
evidence relied on by Reedy in his response to Appellees' motion for summary judgment may
provide an explanation for the problem, it does not serve to dispute Appellees' summary judgment
evidence underlying the gist of the stories. Moreover, neither the affidavits of Reedy, Paul Janicek
(Contract Construction Superintendent) or Michael Jensen (Home Inspector hired by Kundyseks)
offered by Reedy as summary judgment evidence provide any detailed support for Reedy's argument. 
These affidavits fail to set forth what attempts, if any, were made by Reedy to complete the
foundation work or that the Kundyseks refused to let Reedy complete such work before the plumbing
leak exacerbated the foundation deficiencies. Further still, although there is summary judgment
evidence that such work was, at some point, delayed due to excessive rain, there is no summary
judgment evidence regarding when this rain delay occurred, whether the rain persisted after the
Kundyseks moved into the house or when, at the earliest, such work could have taken place. Finally,
both the television broadcast and the web article specifically state Reedy's claim that the Kundyseks
"knew of unfinished inspections but insisted on moving in anyway." As such, we conclude that the
summary judgment evidence related to the facts underlying the gist of the stories at issue is
undisputed. Therefore, we hold that the television broadcast and the web article are substantially
true. Reedy's first issue is overruled. (5)


Reconsideration of Summary Judgment Motions and Evidence In his third and fourth issues, Reedy contends that the trial court erroneously refused to
reconsider Appellees' motion for summary judgment and reopen the summary judgment evidence
because Reedy labored under an impossible set of deadlines to submit summary judgment evidence,
because he presented newly discovered evidence in support of his motion for new trial, and because
Appellees engaged in discovery abuse. The trial court's determination of whether to allow reopening
of the summary judgment is left to its discretion. See Farmer v. Ben E. Keith Co., 919 S.W.2d 171,
176 (Tex. App.-Fort Worth 1996, no writ); Beavers v. Goose Creek Consol. I.S.D., 884 S.W.2d
932, 935 (Tex. App.-Waco 1994, writ denied); Wales v. Williford, 745 S.W.2d 455, 457 (Tex.
App.-Beaumont 1988, writ denied). An abuse of discretion occurs when a court acts without
reference to guiding rules or principles, or acts arbitrarily or unreasonably. Stelly v. Papania, 927
S.W.2d 620, 622 (Tex. 1996).

 Though Reedy argues in his brief that he was laboring under an impossible set of deadlines,
he fails to address the fact that Appellees' hearing on its motion for summary judgment was reset
four times before it was finally heard. Appellees' motion for summary judgment was filed on
February 1, 2001. The motion was ultimately heard on June 1, 2001, four months after it was filed. 
Thus, Reedy was not required to file a response until May 25, 2001, 114 days from the date
Appellees filed their motion. Under the Texas Rules of Civil Procedure, a party may be required to
file a response to a motion for summary judgment in as little as fourteen days from the time he is
served with the opposing party's motion. See Tex. R. Civ. P. 166a(c). Here, the minimum time
afforded by the law was increased by a factor of eight. Moreover, although Reedy complains of
discovery abuse on Appellees' part and alleges groundless objections to his discovery requests, the
record does not reveal that Reedy ever filed a motion to compel in this regard. Finally, although the
trial court is permitted to reopen the summary judgment evidence, see Tex. R. Civ. P. 166a(f), it was
not required to do so. See Farmer, 919 S.W.2d at 176.

 In support of his argument that additional evidence should have been allowed, Reedy cites
Risner v. McDonald's Corp., 18 S.W.3d 903, 908 (Tex. App.-Beaumont 2000, pet. denied), in
which the court stated that "a party may not present any additional evidence upon a motion for new
trial, where that evidence is not newly discovered." Risner, 18 S.W.3d at 908. However, it is
incumbent upon the party seeking a new trial on the ground of newly discovered evidence to satisfy
the trial court that the evidence has come to his knowledge since trial, that it was not owing to the
want of due diligence that it did not come sooner, that it is not cumulative, and that it is so material
that it would probably produce a different result if a new trial were granted. Jackson v. Van Winkle, 
660 S.W.2d 807, 809 (Tex. 1983). 

 In both his motion for new trial and during the hearing thereon, although Reedy refers to the
evidence he sought to supplement as "essential," he offers little by way of cogent argument that the
evidence was so material that it would probably produce a different result if a new trial were granted. 
Indeed, considering our determination of the gist of the story as set forth above, the supplemental
evidence offered by Reedy does not dispute the underlying facts thereof. Moreover, to the extent that
this supplemental evidence relates to attempts by Reedy to finish the foundation work, as opposed
to his offering to correct the problems following the plumbing leak that magnified the foundation's
shortcomings, such evidence is no more specific than the affidavit testimony offered by Reedy, Paul
Janicek or Michael Jensen in conjunction with Reedy's original response. In fact, even assuming
these matters were material, Reedy makes no argument relating to why the matters set forth in his
letter of January 20, 1999 could not have, in the exercise of due diligence, been incorporated in
Reedy's affidavit in the first place. Finally, as it is not pertinent to the gist of the stories whether
Reedy could have successfully corrected the problem at the Kundysek house following the water
leak, the affidavit of Julie Reynolds, whose similar complaints were satisfied by Reedy, is not
material. We hold that Reedy failed to meet his burden for presenting newly discovered evidence.

 Since Reedy was given an extensive amount of time to file a response to Appellees' motion
for summary judgment, since he failed to meet his burden for presenting new evidence in
conjunction with his motion for new trial, and since he failed to raise allegations of discovery abuse
via a motion to compel, we conclude that the trial court did not act arbitrarily or unreasonably in
overruling Reedy's motion for new trial, and therefore, hold that the trial court did not abuse its
discretion in this regard. Reedy's third and fourth issues are overruled.

 Accordingly, the trial court's order granting Appellees' motion for summary judgment is
affirmed.

 SAM GRIFFITH 

 Justice

Opinion delivered November 27, 2002.

Panel consisted of Worthen, J., and Griffith, J.

Gohmert, Jr., C.J. concurring.


 I respectfully concur. In a full analysis of the published stories by Appellants, the gist
appears to be a good deal more about Appellant than indicated in the majority opinion. It would
seem that the gist of the story should be more as follows: the Kundyseks bought a house that was
advertised to be newly constructed by Reedy, though Reedy had used part of the foundation from the
previous house on the lot; after they moved in, the Kundyseks had a substantial plumbing leak
develop that allowed a major accumulation of water under the house; the water was not drained
timely causing mold contamination of the house and the Kundyseks moved out of the house; Reedy
says it was a unique problem, yet he is being sued by another homeowner across the street for a
similar problem.


 In fairness to Reedy, he and his actions are at the heart of the "gist" of the stories in the mind
of the average reader or viewer. The stories may well have cast him in a bad light. As stated in the
majority opinion, however, the applicable law here compels an analysis of the stories and the gist,
with truth being an absolute defense. See Tex. Civ. Prac. & Rem. Code Ann. § 73.005 (Vernon
1997). According to Lewis and McIlvain also cited above, a media defendant is entitled to summary
judgment upon a showing of the substantial truth of its publication. Unfortunately for Appellant,
the supporting evidence for the facts underlying the gist of the stories is indisputable. Until and
unless our supreme court reconsiders the requirements for reviewing such a case and the feasability
of determining a "gist," I must concur in the outcome of this decision.























(PUBLISH)
1. Based on our review of the summary judgment evidence, although the Kundyseks home was technically a
remodel, every part of the home was newly constructed except for the old portion of the foundation.
2. Reedy stated in his affidavit that he agreed to let the Kundyseks close and move in prior to completion
with the understanding that the drainage improvements and final building inspections were not yet complete.
3. A majority of the main points of the web article are taken verbatim from the television broadcast. That
being said, there are some statements that were in the television broadcast which were not included in the web
article. We have viewed the television broadcast and conclude that the additional statements contained therein
would not have any bearing on our determination of the gist of the story as set forth herein. For all intents and
purposes, the gist of the television broadcast and the web article is the same.
4. In the interest of accuracy, the text of the web article has been reproduced verbatim, with any peculiarities
in spelling, grammar and punctuation intact.
5. Since we have determined that the television broadcast and web article are substantially true, we need not
determine whether Reedy is a public figure or whether he demonstrated actual malice.