Opinion issued June 10, 2004


















In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00706-CV




WALTER ROSS, Appellant
 
V.
 
BANK OF AMERICA, Appellee




On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2002-00589




MEMORANDUM OPINION
          Appellant, Walter Ross (Ross), challenges the trial court’s rendition of
summary judgment in favor of appellee, Bank of America (the Bank), in Ross’s suit
for false imprisonment and intentional infliction of emotional distress. In two issues,
Ross contends that the trial court erred in rendering summary judgment in favor of
the Bank on his false imprisonment claim because the summary judgment evidence
does not establish as a matter of law that there were no genuine issues of material fact
as to whether (1) the Bank’s employees “instigated” his false imprisonment and (2)
his detention was “under authority of law.”



          We affirm.
Factual and Procedural Background
          The summary judgment evidence reveals that, on May 17, 2001, Ross, who is
African-American, went to a branch office of the Bank to cash a $2,000 check drawn
on his wife’s account. As he entered the branch, Ross greeted the security guard,
Jerry Ramirez, and then got in line, behind another African-American male, to cash
the check. After a teller to Ross’s right called the other man to her window, the teller
to Ross’s left called Ross to her window. The teller, Samantha DeHoyos, cashed
Ross’s check and gave him twenty $100 bills in a bank envelope. As Ross left the
branch, he said goodbye to Ramirez. Ross then got into his red Ford Explorer, put
the money in the glove compartment, and drove away.
          As Ross cashed his check, the other African-American male handed another
teller, Stephanie Duplesis, a note demanding money, and she complied with his
demand. Duplesis, in an affidavit attached to the Bank’s motion for summary
judgment, stated that “as soon as the robber left,” she told Ramirez that she had been
robbed by “an African-American male, short (5’4” to 5’6”), heavy set, wearing a
leather baseball cap, glasses and a Hawaiian style shirt (multi-colored).” Ramirez
then went out into the parking lot, and Duplesis notified her manager, who called for
emergency assistance.
          Ramirez, in an affidavit attached to the Bank’s motion, stated that, after
Duplesis had told him that she had been robbed and had described the robber as a
“[b]lack male, wearing a baseball cap,” he went out to the parking lot, saw no one
there on foot, and returned to the bank to wait for the police to arrive. After a Federal
Bureau of Investigation (FBI) agent arrived, Ramirez gave the agent the description
of the robber provided to him by Duplesis.
          The record contains inconsistencies as to who gave what description of the
robber to law enforcement authorities. In her deposition testimony, which was
attached to Ross’s response to the Bank’s motion for summary judgment, Duplesis
stated that, after she told Ramirez that she had been robbed, “he went out to look for
the guy that robbed me.” According to Duplesis, Ramirez did not ask her any
questions, did not ask for a description of the robber, and did not ask about his skin
color. The Houston Police Department (HPD) offense report, attached to the Bank’s
motion, indicated that Duplesis herself actually gave a description of the suspect to
an officer and that an HPD dispatcher put out a call for a “bank robbery suspect
vehicle” matching Ross’s Ford Explorer and license plate number.



          The report also indicated that HPD Officer J. D. Dworak heard the call and saw
appellant driving his Ford Explorer. Dworak called for backup assistance, and
several marked police cars surrounded the Explorer and stopped it. An officer
pointed a gun at Ross and ordered him out of the Explorer. The officers handcuffed
him and questioned him about where had he been and when had he changed clothes. 
He responded that he had been at the bank and had not changed clothes. After the
officers searched his car and found the twenty $100 bills in the glove box, they took
Ross and the Explorer back to the bank for identification.
          Ross, in an affidavit attached to his response, stated that an FBI agent told him
that Ramirez had recorded Ross’s license plate number as Ross drove away and had
called the FBI. When Duplesis saw Ross, she told the authorities that Ross was not
the robber. The Bank provided the authorities with security videotapes of the robbery. 
After ascertaining that Ross was not the robber, the authorities released Ross and
interviewed him as a witness. Someone showed Ross a photograph of an African-American male from the surveillance camera, and Ross identified the man depicted
in the photograph as the same man who had stood in front of him in line while he
waited to cash his check. After having been detained for approximately two and one-half hours, Ross was permitted to leave the bank.
          Ross sued the Bank for false imprisonment


 and for intentional infliction of
emotional distress, alleging that the Bank security guard made a “false and wrong
identification” of Ross as “an armed robber.” In its summary judgment motion, the
Bank asserted that Ross’s false imprisonment claim failed as a matter of law because
(1) the Bank did not “direct, request or participate” in HPD’s detention of Ross and
(2) HPD had authority of law to detain Ross. The bank emphasized Texas’s strong
public policy in favor of exposing and reporting crime and noted that, under Texas
law, a private citizen does not incur liability simply because he mistakenly informs
a peace officer that a suspect has committed a crime. The trial court granted the
Bank’s motion and rendered judgment for the Bank and against Ross.
Standard of Review
          We are mindful that the purpose and function of summary judgment is not to
deprive litigants of the right to trial by jury, but to eliminate “patently unmeritorious
claims and untenable defenses.” Gulbenkian v. Penn, 252 S.W.2d 929, 931 (Tex.
1952). To prevail on a motion for summary judgment, a movant has the burden to
establish that he or she is entitled to judgment as a matter of law because there is no
genuine issue as to any material fact. Tex. R. Civ. P. 166a(c); Randall’s Food Mkts.,
Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). In reviewing a summary
judgment, we must accept as true evidence favorable to the non-movant, indulging
every reasonable inference and resolving all doubts in his favor. Id. Once a movant
has established a right to summary judgment, the burden shifts to the non-movant to
respond to the motion for summary judgment and to present to the trial court any
issues that would preclude summary judgment. Marchal v. Webb, 859 S.W.2d 408,
412 (Tex. App.—Houston [1st Dist.] 1993, pet. denied).
          A defendant who conclusively negates or disproves at least one of the essential
elements of a cause of action is entitled to summary judgment as to that cause of
action. Johnson, 891 S.W.2d at 644. The non-movant is then required to show that
each summary judgment ground alleged was insufficient to support summary
judgment. Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995). Here, the
summary judgment order does not specify the grounds upon which the trial court
ruled. Accordingly, we will affirm the summary judgment if any of the grounds
presented in the supporting motion is meritorious. Harwell v. State Farm Mut. Auto.
Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995).False Imprisonment
          In his first issue, Ross argues that the trial court erred in rendering summary
judgment in favor of the Bank on his false imprisonment claim because the summary
judgment evidence did not establish as a matter of law that there is no genuine issue
of material fact as to whether the Bank’s employees instigated his false imprisonment
by “intentionally providing false/misleading information” to HPD.
          The essential elements of false imprisonment are: (1) a willful detention; (2) no
consent to the detention; and (3) no authority of law for the detention. Johnson, 891
S.W.2d at 644. An employer can be held vicariously liable for a wrongful detention
or arrest made by an employee or agent acting within the scope of employment. See,
e.g., Wal-Mart Stores, Inc. v. Odem, 929 S.W.2d 513, 530 (Tex. App.—San Antonio
1996, writ denied).
          Here, no bank employee participated in Ross’s actual arrest and detention.
Nevertheless, liability for false imprisonment may extend beyond those who willfully
participate in detaining the complaining party to those who request or direct
detention. Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 507 (Tex. 2002). 
False imprisonment’s first element may be satisfied “by conduct that is intended to
cause one to be detained, and in fact causes the detention, even when the actor does
not participate in the detention.” Id. To prove such an “instigation,” a plaintiff must
show that the defendant “clearly directed or requested the arrest.” Id. Such an
instigation, in the case of arrest, “is the equivalent, in words or conduct, of ‘Officer
arrest that man!’” Id. (quoting Restatement (Second) of Torts § 45A cmt. c). 
Accordingly, to hold a third party liable for instigating a detention, “the act of arrest
[must be] made by the officer, not of his or her own volition, but to carry out the
request of the defendant.” Id. (quoting 32 Am.Jur.2d False Imprisonment § 41
(1995)).
          However, liability for instigating a false imprisonment does not extend to “[a] 
private citizen who merely reports a crime and identifies a suspect to law enforcement
authorities [and] has not requested or directed the suspect’s arrest.” Id. As noted by
the Texas Supreme Court:
A citizen has a clear legal right to report criminal misconduct to
authorities, and “from the mere exercise of this right the law will not
permit the inference to be drawn that he ‘requested or directed’ the
arrest, though it be conceded that but for its exercise the arrest would
never have been made.” This is true even when the reporting party
mistakenly identifies the wrong person.
Id. (emphasis added) (quoting Joske v. Irvine, 44 S.W. 1059, 1063 (Tex. 1898)
(emphasis added by Rodriguez court)). Thus, “it is not enough for instigation that the
actor has given information to the police about the commission of a crime, or has
accused the other of committing it, so long as he leaves to the police the decision as
to what shall be done about any arrest, without persuading or influencing them.” Id.
at 507-08 (quoting Restatement (Second) of Torts § 45A cmt. c).
          Ross contends that the summary judgement evidence in this case did not
establish that the Bank was entitled to judgment as a matter of law because there was
a fact issue as to whether Ramirez “knowingly gave false information to the police
and/or intentionally withheld [information] or misled the police.” In support of his
argument he directs our attention to Rodriguez, noting that “a defendant may be liable
for instigating an unlawful arrest if he knowingly provides false information to law
enforcement authorities resulting in the arrest.” 92 S.W.2d at 509 (emphasis added).
          In this regard, Ross makes the following accusations: (1) Duplesis’s
“inconsistent statements” about what she told Ramirez prior to the arrival of HPD
officers at the Bank is “consistent with the Bank’s attempt to fashion a defense of not
intentionally withholding information”; (2) because Ramirez knew that Duplesis
could have given him an “accurate description” of the robber, his “lack of
communicating relevant information” to HPD “was done knowingly and therefore
intentionally”; (3) Ramirez gave Ross’s license plate number to the FBI “without
having truly identified [Ross] as [the robber] and with knowledge that he was
withholding information from the police as to the robber’s true identity”; and (4)
upon Ross’s return to the bank, the Bank’s employees knew that Ross was not the
robber and withheld this information from the authorities. From this, Ross concludes
that there exists a material fact issue as to whether Ramirez and other Bank
employees “intentionally caused the initial detention of Ross and then extended the
unlawful detention of Ross when he was returned to the bank.”
          We disagree. Neither the summary judgment evidence, nor any reasonable
inferences drawn therefrom, support Ross’s accusations. Duplesis’s deposition
testimony that Ramirez did not ask her for a description of the robber is not
inconsistent with her affidavit testimony that she actually gave Ramirez such a
description. Even assuming that Ramirez gave an inaccurate description of the robber
to law enforcement authorities, it does not logically follow that he did so
intentionally. Nor does it logically follow that, because Ramirez gave authorities
Ross’s license plate number, Ramirez “was withholding information from the police
as to the robber’s true identity.” Moreover, Ross’s own affidavit testimony reveals
that, when he was returned to the bank, he was released after the FBI conducted an
identification procedure. Neither the summary judgment evidence, nor any
reasonable inferences drawn therefrom, in any way support Ross’s assertion that the
Bank instigated his arrest by “knowingly” giving “false information” to the
authorities, by “intentionally” withholding information from the authorities, or by
“intentionally” misleading the authorities.
          When viewed in the light most favorable to Ross, the summary judgment
evidence, at best, supports an inference that the Bank employees mistakenly identified
Ross as the robber to law enforcement authorities. However, even assuming that the
Bank’s employees mistakenly identified Ross to the authorities as the robber, “the law
will not permit an inference to be drawn” that the Bank “requested or directed”
Ross’s arrest. See Rodriguez, 92 S.W.2d at 507.
          Here, the summary judgment evidence reveals that the Bank merely reported
a crime, identified a potential suspect to law enforcement authorities, and did not
request or direct the arrest of Ross. We hold that the summary judgment evidence
presented in this case establishes, as a matter of law, that there was no genuine issue
of fact as to whether the Bank “willfully detained” Ross, the first essential element
of his claim for false imprisonment. Accordingly, we further hold that the trial court
did not err in rendering summary judgment in favor of the Bank on this ground.
          We overrule Ross’s first issue.
 

Conclusion
          Having held that the Bank was entitled to judgment as a matter of law in regard
to the first element of Ross’s claim for false imprisonment, we need not address his
second issue concerning the third element of false imprisonment.
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Keyes.

Justice Nuchia, concurring without opinion. See Tex. R. App. P. 47.5.