# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 20, 2009

Charles R. Fulbruge III
Clerk

No. 08-50451
Summary Calendar

KENDRICK J STODDARD

Plaintiff - Appellant

v.

WEST TELEMARKETING, L.P.; WEST BUSINESS SERVICES, L.P.

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas, El Paso Division
No. 06-CV-259

Before KING, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Following a jury verdict in his favor, Kendrick Stoddard appeals the district court's order granting West Telemarketing, L.P.'s renewed motion for judgment as a matter of law on his libel claim. The district court granted the motion because it concluded that Stoddard failed to produce any evidence that the alleged defamatory statements were made with actual malice, a requirement

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

to overcome the employer's qualified privilege for statements made in connection with an employee investigation. For the reasons stated herein, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Stoddard was employed by West Telemarketing, L.P. ("West") as the site director of West's El Paso location. He was the highest ranking manager at this location and had oversight of 1,200 employees. Based on an anonymous employee complaint, West conducted an internal investigation regarding allegations that Stoddard had participated in a sexually inappropriate lap dance with a subordinate female employee in front of other West employees, that he was having an affair with that employee, and that he had committed acts of favoritism towards her. The investigation was performed by Kimberly Johnston, who reported her findings to Norma Schmelling, West's vice-president of Employee Relations. Stoddard admitted to Johnston, and later testified at trial, that the lap dance incident had occurred. He also agreed that the lap dance was "inappropriate . . . and possibly should not have happened."[1] After completing her investigation, Johnston prepared a document entitled "Summary of Findings" that addressed each allegation and proposed certain remedial actions. Johnston recommended that disciplinary action be taken against Stoddard, but

---

[1] Stoddard further stated: "I told [Johnston] that I didn't think that the lap dances were the best thing to do, that I think that I've learned a lesson from this experience, because looking back, I can see how it could cause potential problems down the road. And basically, I told her I wished it hadn't happened."

she stopped short of proposing that he be terminated.[2]  Johnston testified that she did not have the authority to recommend that an employee be terminated.

After reviewing the factual findings in Johnston's report, Schmelling made an independent determination that Stoddard's actions warranted a recommendation of termination.  Schmelling held a conference call with Johnston and another member of the Employee Relations department to discuss her decision to change the report's recommendation.  She testified that although the final decision was hers to make, all three people on this conference call, including Johnston, agreed to change the recommendation to termination.  Schmelling deleted all references in the report to Johnston's proposed remedial actions and replaced each with the single recommendation that Stoddard be terminated.  She did not, however, make any changes to Johnston's findings of fact.  The report did not bear any indication that Schmelling had altered the recommendation.  Schmelling also added a new section to the report entitled "Disciplinary Action for Kendrick Stoddard, DSO."  Although Stoddard argued that this entire section served as the basis of his libel claim, his arguments focused on the following paragraph:

> Through his actions, [Stoddard] has failed to follow and enforce West policy.  He has also failed to hold his managers accountable for same.  He has undermined his authority and shown extremely poor judgment by not only fraternizing with employees after hours but allowing sexually explicit actions (lap dancing by

[2] Stoddard characterizes Johnston's original report as more exonerating than it is.  In his brief, he claims that she recommended no disciplinary action be taken against him.  However, she wrote: "The potential liability that [Stoddard's] actions have caused is serious and it is Employee Relations opinion that these actions merit severe disciplinary action being taken . . . [and] there are a multitude of direct examples of his lack of professional judgment."  She concluded:  "What I was able to confirm is that there is or was a serious concern with [Stoddard's] ability to demonstrate the level of professional judgment appropriate to his position . . . I believe that it is still extremely important for West to formally address the concerns with his professionalism."  While Stoddard is correct that Johnston did not recommend termination, he is incorrect in asserting that she recommended that he not be disciplined.

3

employees) to occur. The latter creates liability for the company as
it could be perceived as contributing to a hostile work environment.

This challenged section concluded: "It is the recommendation of Employee Relations that [Stoddard] be given a Step IV PIN, termination, for his lack of professionalism and failure to follow company policy."

The amended version of the report was forwarded to Matt Driscoll, West's senior vice-president for client operations. After reviewing the report, Driscoll decided to terminate Stoddard. Stoddard filed an internal appeal, which was heard and denied by Schmelling. Stoddard then filed this suit, alleging racial discrimination in connection with his termination under Title VII and alleging defamation based on Schmelling's amended version of the report.

The jury returned a verdict in favor of West on the discrimination claim and in favor of Stoddard on the libel claim. It awarded Stoddard $160,000 for mental anguish, $250,000 for injury to his reputation, and $820,000 in punitive damages.[3] West then filed its renewed motion for judgment as a matter of law. The district court granted the motion, finding that there was insufficient evidence from which the jury could conclude that Schmelling's statements were made with actual malice. Stoddard appeals from the district court's grant of this motion and its final judgment dismissing his libel claim.

## II. DISCUSSION

"After a case has been tried to a jury, a motion under Rule 50 [of the Federal Rules of Civil Procedure] is a challenge to the legal sufficiency of the evidence." *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475, 481 (5th Cir. 2008). We review the district court's ruling on a Rule 50 motion de novo, applying the same standard as the district court. *Id.* Rule 50 allows the district court to grant a motion for judgment as matter of law "[i]f a

---

[3] Stoddard admitted in the district court that punitive damages were statutorily limited to $410,000 in this case.

4

party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). If the action is submitted to the jury, a party may renew its motion for judgment as a matter of law within ten days after entry of the judgment. FED. R. CIV. P. 50(b). "[W]e view all of the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion." *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 622 (5th Cir. 2008) (internal quotation marks and citation omitted).

"[A]n employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing." *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995); *see also Danawala v. Houston Lighting & Power Co.*, 14 F.3d 251, 254 (5th Cir. 1995). "[T]he law presumes good faith and want of malice where the utterance is qualifiedly privileged." *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 630 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). In order to overcome this privilege, the plaintiff must show that the statement was "motivated by actual malice existing at the time of publication." *Randall's,* 891 S.W.2d at 646. "[A] statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard as to its truth." *Id.* Although the burden of proving malice at trial is on the plaintiff, *see Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 314 (5th Cir. 1995), an employer may establish the absence of malice "by conclusively proving that its employees had reasonable grounds to believe that their statements were true," *Randall's*, 891 S.W.2d at 647; *see also Duffy*, 44 F.3d at 314 ("[T]he privilege is not lost if the defendant actually believed the defamatory statement to be true."). When attempting to prove actual malice, "[t]he focus is on [the person making the statement's] state of mind at the time of publication." *Danawala*, 14 F.3d at 255.

5

A combination of falsehood and general hostility is insufficient to show actual malice. *Id*.

Stoddard does not dispute Johnston's factual findings. Indeed, he has repeatedly admitted the lap dance incident occurred and testified that he understood that it was inappropriate. His only challenge is to Schmelling's conclusion that his actions violated company policy, which he claims was false and defamatory. In his brief, Stoddard goes to great lengths explaining how his actions did not violate West's policies. However, he provides scant argument contradicting Schmelling's testimony that she had a good faith belief that his actions violated company policies.[4]

He argues that a reasonable jury could have found that Schmelling knew her accusation that he violated West's policies was false or that she acted with reckless indifference as to her statement's truth because: (1) Schmelling was the highest ranking employee in the Employee Relations department and had worked at West for 12 years; (2) Johnston did not find that West's policies had been violated; (3) Schmelling had decided to recommend termination before the investigation was complete; and (4) she made changes to Johnston's report to support her recommendation of termination and did not indicate that she had made such changes on the face of the report.

---

[4] As an example, Stoddard argues that his failure to report that the employee involved in the lap dance had been arrested did not violate company policy because the policy states that employees have a duty to inform the company of any arrest but does not explicitly place the same burden on managers. Even if we assume that this action was not a violation of the company's policy, Stoddard does not provide any specific argument as to why Schmelling knew this inaction was not a violation of the policy.

Stoddard did, however, provide a specific argument regarding the lap dance incident. He argues that Schmelling knew that this event did not violate West's sexual harassment policy because he and the women involved had previously discussed the incident with Employee Relations and had not been reprimanded. The fact that he had not been previously disciplined for the conduct does not mean that it did not violate the sexual harassment policy, however, and is not evidence that Schmelling knew that he had not violated the policy.

6

Assuming arguendo, as did the district court, that Schmelling's conclusion that Stoddard's actions violated company policies is false, we are not convinced that a jury could have concluded that Schmelling acted with actual malice. Nowhere in Stoddard's evidence or arguments does he address Schmelling's state of mind at the time she wrote the report.

First, Stoddard argues that given Schmelling's 12-year tenure at West and her position as the head of the Employee Relations department, a reasonable jury could not believe that she was unaware of the company's policies. He combines this with the fact that Johnston, who conducted the original investigation, did not specifically find that West's policies had been violated and did not recommend termination. From this, Stoddard concludes that a reasonable jury could find that Schmelling acted with knowledge that her conclusion was false.

However, while Johnston's report did not state in so many words that Stoddard violated West's policies, neither did she state that Stoddard's actions accorded with the company's policies. Johnston merely reported the facts from her investigation, and, from these, Schmelling concluded that West's policies had been violated. If made in the good faith belief that her own conclusion was true, Schmelling's statements are protected by the privilege. Stoddard points to no evidence or testimony suggesting that Schmelling did not hold such a good faith belief.

Stoddard secondly claims that Schmelling made the decision to terminate him before receiving a complete report from Johnston and interprets this to mean that she fabricated the conclusion that he violated company policy to support her predetermined recommendation of termination. Stoddard cites to the December 20, 2005 notes of an employee in the Employee Relations department. These notes state that Schmelling recommended that Stoddard "be let go." Schmelling did not receive Johnston's formal report until January 3,

7

2006. In response, Schmelling testified at trial that she "probably" spoke with Johnston about the investigation prior to December 20, 2005. Further, the final entry in Johnston's investigation notes was made on December 14, 2005, and no new information was discovered between December 20, 2005, and January 3, 2006. Thus, even if Schmelling did not know the specifics of Johnston's findings prior to recommending that he "be let go," the timing of this note alone does not establish that she lacked a good faith belief that Stoddard's actions violated West's policies at that time. Again, Stoddard shows no evidence related to Schmelling's state of mind to establish that she knew her conclusion was false.

Finally, Stoddard argues that Schmelling made changes to Johnston's report to support her recommendation of termination and did not indicate that she had made such changes on the face of the report. To the extent that Stoddard insinuates that Schmelling's deletion of Johnston's recommendations is evidence of her lack of a good faith belief in her conclusion, this argument lacks merit. Johnston's recommendations were all premised on Stoddard's continued employment at West. When Schmelling made the decision to recommend termination, deleting all recommendations based on his continued employment was necessary. For example, it would not make sense for the report to recommend his termination and also recommend that he receive extra training and supervision. Thus, Schmelling made the deletions so that the report would be coherent. To the extent that Stoddard is arguing that Schmelling's failure to indicate in the final report that Johnston had not originally recommended termination shows Schmelling's lack of a good faith belief in her statements, he is contradicted by the record. Schmelling testified that the final recommendation represented the opinion of the entire Employee Relations department and not Johnston specifically. Driscoll testified that he viewed the report in this manner. Additionally, Johnston agreed with Schmelling's decision to recommend termination during the conference call.

8

Stoddard admitted to the principal facts of the investigation and cannot challenge Schmelling's recommendation that he be terminated as it is an opinion and not a verifiable fact. Instead, he argues that Schmelling's conclusion that he violated company policy defamed him. However, her statements are protected by an employer's qualified privilege, and Stoddard presented no evidence to contradict Schmelling's testimony that she held a good faith belief that his actions violated West's policies. Thus, the district court did not err in finding that a reasonable jury could not have found that Schmelling acted with actual malice in drafting the amended report.[5]

### III. CONCLUSION

For the reasons stated above, we AFFIRM the district court's judgment.

---

[5] We do not need to reach Stoddard's arguments regarding the jury's award of punitive damages because we affirm the district court's final judgment in favor of West.