Opinion issued July 1, 2004













In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01234-CV




JIMMIE MOORHEAD, Appellant

V.

EAST CHAMBERS INDEPENDENT SCHOOL DISTRICT,
ANAHUAC INDEPENDENT SCHOOL DISTRICT,
GOOSE CREEK CONSOLIDATED INDEPENDENT SCHOOL DISTRICT,
AND BARBERS HILL INDEPENDENT SCHOOL DISTRICT, Appellees




On Appeal from the 334th District Court
Chambers County, Texas
Trial Court Cause No. 19642
(Consolidated with No. 19880)




MEMORANDUM OPINION
           In this interlocutory appeal, appellant, Jimmie Moorhead, challenges the trial court’s
denial of her motion for summary judgment, which was based on appellees’ alleged
settlement with appellant’s employer, Chambers County, and official immunity. We affirm. 
BACKGROUND
           Appellant served as County Treasurer of Chambers County, Texas (the County) from
1979 to 1987 and county auditor from 1987 to 2001. Appellant supervised the monies in the
Chambers County Permanent School Fund (the Fund) account from 1980 until 2000, at
which time the County Judge transferred control of the Fund from appellant to Carren
Sparks, the new County Treasurer. The Fund consisted of royalties and other proceeds
generated from lands held in trust by the County for the benefit of appellees and was
deposited with Security State Bank (the Bank) in Anahuac, Texas. The Bank was the
County’s depository bank, and the County was the Bank’s largest customer. The president
of the Bank was Douglas Cameron, who had a close, personal and professional relationship
with appellant. Cameron was the bank officer in charge of the County accounts, including
the Fund account.
           Until 1980, the Texas Education Agency (TEA) required that counties file reports of
activity in a school district’s permanent school funds. Reports filed by the County show that,
prior to 1980, the monies in the Fund were continuously invested. Records show that, after
1980, the monies were kept in a non-interest-bearing checking account and were invested
approximately 25% of the time. During this same period, the County’s operating funds were
continuously invested in instruments of longer duration and generally with a higher yield. 
After the County Judge transferred the responsibility for the Fund to Sparks, the monies were
placed in an interest-bearing account and were invested according to the trust requirements. 
           Appellees alleged that appellant and Cameron acted in concert and conspired to
handle the Fund account in a way that benefitted the Bank by increasing the Bank’s profits. 
In return, according to appellees, Cameron gave appellant favorable treatment in her personal
dealings with the Bank. 
The Lawsuits
           In February 2002, appellee East Chambers Independent School District petitioned the
district court under rule 202 of the Texas Rules of Civil Procedure to depose Cameron and
appellant. The court permitted appellee to take appellant’s deposition. After taking
appellant’s deposition, appellees


 filed a second amended petition asserting breach of
fiduciary duty, breach of trust, and negligence claims against the Bank. The Bank filed a
lawsuit against appellees and the County, seeking a declaratory judgment of no liability for
its role in managing the Fund. 
           The Bank, the County, and appellees agreed to consolidate the two lawsuits. On
November 4, 2002 at the hearing on the motion to consolidate, the parties made several
stipulations on the record in connection with the proposed consolidation, including the
following: 
           •         In the consolidated case, appellees would be the plaintiffs and the Bank would
be the defendant, with its declaratory judgment action proceeding as a
counterclaim;
 
           •         The Bank would nonsuit the County as a party, and the consolidated case
would include only appellees and the Bank as parties;
 
           •         Counsel for appellees would exert his best efforts to obtain a formal release by
each appellee in favor of the County;
 
           •         The Bank would amend its pleadings and nonsuit its claims against the
County. 

           Appellees executed releases that provided in pertinent part:
WHEREAS, the School Districts recognize that Chambers County (the
“County”), as a unit of government in Texas, is immune from any claims
arising from the maintenance of the Chambers County Permanent School
Fund; and 
 
WHEREAS, the School Districts, therefore, have not asserted,
threatened to assert, nor do they intend to assert any claims against the County,
itself, arising from the maintenance of the Chambers County Permanent
School Fund; 
 
NOW, THEREFORE, in order to formalize the intent of the School
Districts, the [name of the school district] Independent School District
does, pursuant to Board action, hereby release, acquit, and forever discharge
Chambers County from any and all claims or causes of action of any kind
whatsoever, at common law, statutory or otherwise, arising from the
maintenance of the Chambers County Permanent School Fund during the
period from 1979 to 2000. 

The trial court signed an order consolidating the two lawsuits, and appellees filed a third
amended petition that added appellant as a defendant. 
           On March 25, 2003, appellant filed a motion for summary judgment in which she
contended, as her sole ground, that she was entitled to immunity under section 101.106 of
the Civil Practice & Remedies Code, which provided as follows:
A judgment in an action or settlement of a claim under this chapter bars
any action involving the same subject matter by the claimant against the
employee of the governmental unit whose act or omission gave rise to the
claim. 

Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3305,
amended by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 11.05, 2003 Tex. Gen. Laws
847, 886, (now codified as Tex. Civ. Prac. & Rem. Code Ann. § 101.106(c) (Vernon Supp.
2004)).


 Appellant argued that appellees had entered into a settlement with the County, that
appellees’ settlement of their claims against the County barred any further action against her
arising from the same occurrence, and, therefore, that she was immune from individual
liability under section 101.106. The trial court denied her motion by written order on May
21, 2003. 
           After appellant filed her motion for summary judgment, but before the trial court’s
ruling, each appellee executed a “Rescission of Release” stating that the release had been
executed “solely for the purpose of memorializing the intention of the School District to not
assert any claim against the County . . . since the County was immune from such claim, and
not to indicate . . . the existence of any settlement with the County, since no such settlement
has ever taken place . . . .” 
           On September 2, 2003, appellant filed a second motion for summary judgment in
which she first asserted that she was entitled to the defense of official immunity because her
actions about which appellees complained were discretionary duties that she performed in
good faith. Appellant also reasserted her claim to immunity under section 101.106. In this
second motion, appellant provided more details regarding the stipulations of the parties, the
consolidation of the two cases, the releases executed by appellees, and the rescission of those
releases. She argued that the releases were void and that the appellees’ releases of their
claims against the County barred any further action against her arising from the same
occurrence, and, therefore, that she was immune from individual liability under section
101.106. The trial court denied appellant’s second motion by written order on November 10,
and appellant filed a notice of appeal on November 24, 2003. 
DISCUSSION
Jurisdiction of Section 101.106 Immunity Claim
           In her first issue, appellant contends that the trial court erred in denying appellant’s
motion for summary judgment because, as an employee of Chambers County, she is immune
from liability as a matter of law under section 101.106 of the Texas Civil Practice &
Remedies Code. We first consider appellees’ challenge to this Court’s jurisdiction over
appellant’s claim of immunity under section 101.106. 
           A party may appeal from an interlocutory order denying a motion for summary
judgment that is based on an assertion of immunity by an individual who is an officer or
employee of the state or its political subdivision. Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(5) (Vernon Supp. 2004). An appeal from an interlocutory order is accelerated. 
Tex. R. App. P. 28.1. Therefore, the notice of appeal must be filed within 20 days after the
order is signed. Tex. R. App. P. 26.1(b). Filing a motion for new trial will not extend the
time to perfect the appeal of an interlocutory order. Tex. R. App. P. 28.1. However, a
governmental entity whose motion is denied may reassert its immunity defense if later
evidence shows that its immunity has not been waived. Reynosa v. Univ. of Tex. Health Sci.
Ctr., 57 S.W.3d 442, 444 (Tex. App.—San Antonio 2001, pet. denied). 
           Appellees contend that appellant’s deadline for filing a notice of appeal of the denial
of her claim of immunity under section 101.106 was 20 days after the trial court signed the
order on May 21, 2003, and that reasserting section 101.106 as a basis for summary judgment
in her second motion did not restart her deadline for her notice of appeal. Appellees cite
Denton County v. Huther, 43 S.W.3d 665 (Tex. App.—Fort Worth 2001, no pet.) to support
their contention. 
           In Huther, the county’s plea to the jurisdiction claiming that the suit was barred by
sovereign immunity was denied in May. Id. at 666. In August, the county filed a motion to
reconsider and a renewed plea to the jurisdiction, which was also denied. Id. The county
filed a notice of appeal within 20 days of the second denial. Id. The court of appeals
dismissed the appeal for want of jurisdiction. Id. at 667. The court rejected the county’s
argument that the order denying the second plea was appealable because it was based on new
authority. Id. The court concluded that there was no substantive difference between the
renewed plea and a typical motion for new trial, which does not extend the appellate timeline
for an interlocutory appeal. Id. The court held that the county was required to file its notice
of appeal within 20 days of the original order denying the county’s plea to the jurisdiction. 
Id. 
           Appellant attempts to distinguish this case from Huther on its facts. Appellant argues
that she attached copies of the releases to her initial motion, but tried to pass the hearing on
the motion so that she could supply additional evidence in support of her claim of immunity
under section 101.106. Appellant contends that, consistent with her representations to the
trial court, she attached to her second motion the following additional evidence: (1) her
deposition excerpts, (2) the transcript of the hearing on the motion for consolidation, (3) the
releases executed by appellees, (4) the rescissions executed by appellees, and (5) the affidavit
of Robert Sturdivant. 
           Appellant’s March motion and September motion were both based on appellant’s
claim of immunity under section 101.106. Appellant recited more facts in the September
motion and attached additional summary judgment proof. However, much of that proof was
available at the time she filed her March motion. Her deposition was taken nearly 11 months
before she filed the motion, and the hearing on the motion to consolidate was held more than
four months before she filed the motion. The releases and rescissions were before the court
because appellees attached them to their response to her motion. Only Sturdevant’s affidavit
was not available prior to the hearing on the motion, and that affidavit does not address
section 101.106 immunity. 
           Both the March and the September motions asserted section 101.106 immunity based
on the alleged settlement and release of appellees’ claims against the county. We hold that
there is no substantive difference between the March motion and the section 101.106 claim
of the September motion. Therefore, this court has no jurisdiction to review appellant’s
section 101.106 immunity claim because of appellant’s failure to file a notice of appeal
within 20 days of the trial court’s May 21, 2003 denial of appellant’s motion for summary
judgment.


 Accordingly, we decline to address appellant’s first issue.


 
Official Immunity
           In her second issue, appellant contends that the trial court erred in denying appellant’s
motion for summary judgment because she is entitled to official immunity. To prevail on a
motion for summary judgment, the movant has the burden of showing that there is no
genuine issue of material fact and that it is entitled to judgment as a matter of law. Randall’s
Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). When a defendant moves
for summary judgment based on an affirmative defense, the defendant has the burden of
proving each essential element of that defense. Ryland Group, Inc. v. Hood, 924 S.W.2d
120, 121 (Tex. 1996). On appeal, we review the evidence in the light most favorable to the
nonmovant, accepting as true all evidence supporting the nonmovant and indulging every
reasonable inference in the nonmovant’s favor. Johnson, 891 S.W.2d at 644.
           To be entitled to summary judgment on her official-immunity defense, appellant must
conclusively prove all the elements of that affirmative defense. Univ. of Houston v. Clark,
38 S.W.3d 578, 580 (Tex. 2000). As a governmental employee, appellant was entitled to
official immunity (1) for the performance of discretionary duties (2) within the scope of her
authority (3) for acts she performed in good faith. Id. Appellees, in their response to
appellant’s motion, did not contest the first two elements of appellant’s defense. Therefore,
the issue before this Court is whether appellant conclusively established that she acted in
good faith. 
           The test for good faith “is one of objective legal reasonableness, without regard to
whether the government official involved acted with subjective good faith.” City of
Lancaster v. Chambers, 883 S.W.2d 650, 656 (Tex. 1994) (quoting Swint v. City of Wadley,
5 F.3d 1435, 1441-42 (11th Cir. 1993)). To establish good faith, appellant must show that
a reasonably prudent official, under the same or similar circumstances, could have believed
that the questioned conduct was justified based on the information she possessed when the
conduct occurred. See Telthorster v. Tennell, 92 S.W.3d 457, 465 (Tex. 2002). 
           In her motion for summary judgment, appellant directed the trial court generally,
without analysis, to excerpts from her own deposition and to the affidavit of Robert
Sturdivant, the County Auditor for Fort Bend County, to prove the element of good faith. 
On appeal, appellant contends that her own deposition established that, from 1971 to 1987,
she did not exercise any control over the Fund, but merely kept the books; that, as treasurer,
she issued the checks for the investments as instructed by the County Judge, but did not do
the investing. She also asserts that, beginning in 1987 when she was appointed County
Auditor, she continued the bookkeeping function at the judge’s request and the judge
continued to make the decisions until his death in 1997. She contends that, as shown in her
deposition, she would remind the new County Judge to make a Fund investment, he would
instruct her to invest the funds, and she or someone in her office would call the bank and
request the best interest rate. 
           The record does not support appellant’s assertion that her role with regard to
investment of the monies in the Fund was limited to bookkeeping. In her deposition,
appellant testified as follows regarding those investments:
Q.And then starting in 1997 when Judge Nelson died, who made
the investment decisions? 
 
A.I did, because I would ask – I tried to give the books back to the
current county judge. He said, “No, you keep them.” And on occasion when
I would be looking at the books, I knew we needed to invest money and I’d go
tell him, “I need to invest some school funds,” and he’d say “Go for it.” 
 
Q.Well, when I asked you earlier if you ever made the investment
decisions, you said no. That wasn’t accurate?
 
A.I thought we were – I’m sorry, I thought we were talking about
when Judge Nelson was in office.

                      . . . .
 
Q.From 1997 to 2000, I guess, September or October of 2000, you
made the investment decisions? 

A.Yes, sir. 

           Thus, appellant’s deposition testimony established that, at least from 1997 to 2000,
she made the investment decisions for the Fund. Her deposition did not establish that a
reasonably prudent official, under the same or similar circumstances, could have believed
that the investment decisions she made were justified based on the information she possessed
when the conduct occurred. Thus, appellant’s deposition does not establish, as a matter of
law, her objective good faith. 
           Appellant contends that the affidavit of Sturdevant established her good faith. In his
affidavit, Sturdevant, after giving his qualifications to make the affidavit, stated the
following:
4.I understand a county official may not invest county funds unless he or
she is appointed by the Commissioners Court as an Investment Officer
for the County, as mandated by the Public Funds Investment Act. 
 
5.I have read the Plaintiffs’ Petition in this matter and I am aware of the
Plaintiffs’ allegations that Jimmie Moorhead negligently invested the
Permanent School Fund between the years 1997 and 2000, during her
tenure as County Auditor for Chambers County. I am also aware,
during that time, Jimmie Moorhead was not designated as an
Investment Officer for Chambers County, pursuant to the Public Funds
Investment Act, but that at some time prior to her tenure as County
Auditor, Moorhead had served as an Investment Officer for Chambers
County.
 
6.I am aware that, prior to investing the Permanent School Funds, Jimmie
Moorhead would contact the bank handling the School Fund account
to gather information necessary to decide what investment vehicles the
funds should be placed in. I am further aware that, although she was
not designated as an Investment Officer at the time, Jimmie Moorhead
was frequently assigned the task of communicating investment
instructions for the County Permanent School Fund by the presiding
County Judge between the years 1997 and 2000. I agree Moorhead
acted reasonably in not making investment decisions if she was not the
County’s Investment Officer for the County Permanent School Fund.
 
7.I believe a reasonable, similarly situated County Auditor could have
believed Moorhead was justified in transmitting investment instructions
for the Permanent School Funds under these circumstances, based upon
the information possessed at the time the funds were invested. 
Moorhead’s actions involved personal deliberation, decision and
judgment. Futher, Moorhead’s actions involved matters within the
scope of her authority as County Auditor. A reasonably prudent County
Auditor, under the same or similar circumstances, could have believed
Moorhead’s conduct was justified and reasonable based upon the
information she possessed when the conduct occurred. 
 
8.Oftentimes, in the furtherance of county duties, it is necessary for a
county official to contact outside sources to aid in making certain
decisions or effecting county business. To that end, it is reasonable for
a County Auditor to contact an outside source of information, such as
a bank or brokerage firm, to gather information that would aid in
making certain financial decisions on behalf of the County or to
transmit instructions from the County’s governing body and/or chief
executive, the County Judge to outside agencies or individuals. 

           An expert’s testimony will support summary judgment only if it is “clear, positive and
direct, otherwise credible and free from contradictions and inconsistencies, and could have
been readily controverted.” Tex. R. Civ. P. 166a(c). Sturdivant’s affidavit did not meet this
test. His affidavit was premised on facts that were not supported by the record: that
appellant did not make any investment decisions and that appellant merely transmitted the
County Judge’s investment instructions. That premise was controverted by appellant’s
deposition testimony. In addition, Sturdivant’s affidavit did not address the entire time
period included in appellees’ claims, 1980 to 2000. Rather, it addressed only 1997 to 2000,
the time period during which, according to her deposition testimony, appellant made the
investment decisions. Therefore, Sturdivant’s affidavit did not conclusively establish that
appellant acted in objective good faith. 
           We overrule appellant’s second issue.
CONCLUSION
           We affirm the judgment. 
 
 
                                                                  Sam Nuchia
                                                                  Justice

Panel consists of Justices Nuchia, Jennings, and Keyes.